IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| GARY WAYNE WRIGHT, II, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:17-CV-02101-KOB |
| ) | |
| UNITED STATES OF AMERICA, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

This matter comes before the court on "Defendant's Motion and Brief for Dismissal of Plaintiff's Fourth Amended Complaint (Doc. 35)." (Doc. 41). On August 8, 2018, this court ordered Plaintiff Wright, *pro se*, to show cause why the court should not grant the motion pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. 43). Mr. Wright filed a response (doc. 47), and the motion is ripe for review. The Defendant's motion alternatively requested summary judgment. The court is only ruling upon the motion to dismiss. The court did not consider this motion as one for summary judgment, nor did it rely on any evidence outside of the pleadings.

In this court's Show Cause Order, the court directed Mr. Wright to provide the court with a legitimate reason why (1) Count I should not be dismissed for failure to comply with 28 U.S.C. § 2657(a)'s pre-suit requirements; (2) Counts II, III, and IV are not barred by sovereign immunity; (3) Counts II, V, and VI should not be dismissed for lack of standing; and (4) Count VI should not be dismissed for Plaintiff's failure to first exhaust his administrative remedies under the Privacy Act of 1974. Although Mr. Wright filed a response, the court considered each of his arguments and claims, but found no legal reason why the court should not dismiss each of

1

the six counts. The court will address each argument and claim found to have merit below. For the reasons explained below, the court will GRANT the United States' motion and dismiss Plaintiff's Fourth Amended Complaint.

I.  **BACKGROUND**

Plaintiff Wright is a veteran of the United States Navy. (Doc. 35 at 3). Mr. Wright has received medical treatment from various health professionals through the Department of Veterans Affairs since his discharge from the Navy at some unstated time. He has visited the VA approximately 69 times since July 12, 2016, seeking treatment for symptoms of myopathy, including muscle and joint pain, difficulty breathing, and tightness in his chest. Mr. Wright also has a family history of Malignant Hyperthermia, which may cause fatal reactions to anesthesia, allergies to antibiotics, and increasingly severe vasovagal reactions.

First, Mr. Wright claims the employees of the VA Medical Center in Birmingham, Alabama; the VA Community Based Outreach Clinic in Huntsville, Alabama; and the VA Community Based Outreach Clinic in Guntersville, Alabama negligently failed to provide him with appropriate care, treatment, and diagnosis of his symptoms. (Doc. 35 at 8). More specifically, he alleges the VA employees failed to perform tests that he needed and that he specifically requested, failed to maintain sufficiently clear medical records, failed to properly treat him, and failed to respond to his requests for proper treatment.

Second, Mr. Wright also claims the United States violated his First Amendment right "by denying his ability to petition the government for a redress of grievances." (Doc. 35 at 9). In particular, the "VA Medical Director" did not respond to his letters and phone calls, and the Secretary of the VA did not respond to his certified letter requesting a meeting to discuss "the violation of constitutional rights" and the medical malpractice occurring at the VA. (*Id.*) Mr.

2

Wright maintains that the Office of the Inspector General and the Office of Accountability and Whistleblower Protection were unable to properly investigate the VA because the Secretary refused to share his complaint data with the Inspector General. (*Id.* at 10).

Third, Mr. Wright claims the United States violated his Fourteenth Amendment right to due process because the VA "failed to properly staff their agencies for the influx of Gulf War era veterans, which created an unacceptable backlog of cases resulting in veterans waiting for care." (Doc. 35 at 11). He alleges the VA "created secret patient waiting lists, created fake appointments, denied cases without proper consideration, and delayed care to meet performance metrics and quotas." (*Id.*).

Fourth, Mr. Wright claims the United States violated his Fourteenth Amendment right to equal protection because the Department of Justice revoked guidance so that businesses and healthcare providers may now discriminate against LGBT persons. (Doc. 35 at 12). He further claims that the VA deleted references to LGBT resources and that the Secretary of the VA has connections to various individuals and organizations that discriminate against LGBT persons and/or racial minorities such that the VA has created an unsafe environment for Mr. Wright. (*Id.* at 12–13).

Fifth, Mr. Wright claims "[t]he 'acting' secretary of [the VA] is illegitimate." (Doc. 35 at 13). Mr. Wright maintains that because former Secretary of the VA David Shulkin did not resign, the lawful Secretary of the VA must be the Deputy Secretary. (*Id.*). However, he notes that he "is not asking the Court to resolve this issue," but wants this information considered when computing damages. (*Id.*).

Sixth, Mr. Wright claims the United States has failed to safeguard critical data. (Doc. 35 at 16). He alleges that because the United States has failed to implement data security

3

procedures, his private data has been lost, as have the identities of intelligence community informants. (*Id.* at 15–16).

## II. STANDARD OF REVIEW

The Defendant United States challenges the Complaint pursuant to Rules 12(b)(1)[1] and 12(b)(6).

Federal courts cannot hear cases that fall outside of the limited jurisdiction granted to them. *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 974–75 (11th Cir. 2005). And under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a party may move the court to dismiss a case if it lacks jurisdiction over the subject matter of the case. Mr. Wright, as the party invoking the court's subject matter jurisdiction, bears the burden of establishing that jurisdiction exists. *See Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir. 1994).

Attacks on subject matter jurisdiction under Rule 12(b)(1) occur in two forms: facial attacks and factual attacks. *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990); *Eaton v. Dorchester Dev., Inc.*, 692 F.2d 727, 731 (11th Cir. 1982). "'Facial attacks' on the complaint require the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true." *McMaster v. United States*, 177 F.3d 936, 940 (11th Cir. 1999) (quoting Lawrence, 919 F.2d at 1528–29). Factual attacks "challenge 'the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered.'" *Lawrence*, 919 F.2d at 1529. If the court determines that it lacks subject matter jurisdiction over a claim, the court must dismiss the claim. Fed. R. Civ. P. 12(h)(3).

---

[1] The court notes, despite the United States' continual references to lack of subject matter jurisdiction under Rule 12(b)(6), (doc. 41 at 4–5, 7–9), that the lack of subject matter jurisdiction challenge properly falls under Rule 12(b)(1) of the Federal Rules of Civil Procedure.

A Rule 12(b)(6) motion to dismiss attacks the legal sufficiency of the complaint. The Federal Rules of Civil Procedure require the complaint to provide "a short and plain statement of the claim" demonstrating that the plaintiff is entitled to relief. Fed. R. Civ. P. 8(a)(1). A plaintiff must provide the grounds of his entitlement, but Rule 8 rarely requires detailed factual allegations. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Rule 8 does, however, demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Pleadings that contain nothing more than a formulaic recitation of the elements of a cause of action do not meet Rule 8 standards. *Twombly*, 550 U.S. at 555, 557.

The Supreme Court explained that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting and explaining its decision in *Twombly*, 550 U.S. at 570). To be plausible on its face, the claim must contain enough facts that "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although "[t]he plausibility standard is not akin to a 'probability requirement,'" the complaint must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

The Supreme Court has identified "two working principles" for the district court to use in applying the facial plausibility standard. The first principle is that, in evaluating motions to dismiss, the court must assume the veracity of *well-pleaded factual* allegations; however, the court does not have to accept as true legal conclusions even when "couched as [] factual

5

allegation[s]" or "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal,* 556 U.S. at 678. The second principle is that "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679. Thus, under prong one, the court determines the factual allegations that are well-pleaded and assumes their veracity, and then proceeds, under prong two, to determine the claim's plausibility given the well-pleaded facts. That task is "context-specific" and, to survive the motion, the allegations must permit the court based on its "judicial experience and common sense . . . to infer more than the mere possibility of misconduct." *Id.* If the court determines that well-pleaded facts, accepted as true, do not state a claim that is plausible, the claim must be dismissed. *Id.*

### III. DISCUSSION

The court will discuss why each count must be dismissed in turn. Counts V and VI have been renumbered from the Fourth Amended Complaint as necessary (enumerated as the second Count 4 and Count 5 in the Complaint).

#### A. Count I

The United States argues that this court lacks jurisdiction over Mr. Wright's Federal Tort Claims Act (FTCA) medical malpractice claim because Mr. Wright failed to comply with the procedural requirements of the FTCA, and thus sovereign immunity bars his suit. (Doc. 44). Specifically, Mr. Wright's claim was not timely filed under 28 U.S.C. § 2401(b), which requires a plaintiff to *first* present the claim to the appropriate federal agency within two years of the accrual of the claim and wait to file in federal court until the agency has taken action *or* six months have passed. So, the United States argues this failure to precisely comply with the statutory requirements closes the window of sovereign immunity opened by the FTCA.

6

Generally, the doctrine of sovereign immunity bars suit against the federal government. Courts use the term "sovereign immunity" to describe the legal principle that "the United States, as sovereign, is immune" from lawsuits unless the United States waives that immunity. *United States v. Sherwood*, 312 U.S. 584, 586 (1941). Further, a "waiver of sovereign immunity cannot be implied but must be unequivocally expressed" by Congress. *United States v. Mitchell*, 445 U.S. 535, 538 (1980) (internal quotations omitted). If the United States has not consented to suit regarding a particular claim, a federal court lacks jurisdiction to hear that claim. "[T]he terms of the government's consent to be sued in any court define that court's jurisdiction to entertain the suit." *Sherwood*, 312 U.S. at 586.

The FTCA waives the United States' sovereign immunity for certain tort claims against it. *See Suarez v. United States*, 22 F.3d 1064, 1065 (11th Cir. 1994) (per curiam) ("The FTCA is a specific, congressional exception to the general rule of sovereign immunity."). This waiver "must be scrupulously observed, and not expanded, by the courts." *Id.*

Under the FTCA, as noted, a plaintiff must first present the tort claim against the United States to the appropriate federal agency within two years of the accrual of the claim. *See* 28 U.S.C. § 2401(b) (2012). The claimant may then bring an action in federal court *only* after the agency has denied the claim or after six months have elapsed from the agency's receipt of the claim without resolution. *See id.* Federal courts strictly enforce the time limitations imposed by § 2401(b). *See Phillips v. United States*, 260 F.3d 1316, 1318 (11th Cir. 2011) ("Therefore, in construing the FTCA's statute of limitations, 'we should not take it upon ourselves to extend the waiver beyond that which Congress intended.'" (citing *United States v. Kubrick*, 444 U.S. 111, 117–18 (1979))). The United States only waives sovereign immunity to the extent that a claim follows the specific procedures set out by Congress in the FTCA.

7

The timing of Mr. Wright's complaint implicates the limited waiver of sovereign immunity within the FTCA. Mr. Wright submitted a Standard Form 95 Claim for Damage, Injury, or Death to the VA (Standard Form 95) on June 16, 2017, (Doc. 35 at 5), which was received by the VA on June 19, 2017. (Doc. 41 at 2). He filed suit on December 15, 2017. (Doc. 1). Mr. Wright contends that an email he received on November 29, 2017 from the VA Office of General Counsel was an effective denial of his claim. (Doc. 35 at 6). The United States argues that the VA had not yet denied his claim because the email from the VA was not a formal denial. (Doc. 41 at 4).

Mr. Wright filed his FTCA claim prematurely. When the VA received his Standard Form 95 on June 19, 2017, the six-month waiting period began. *See Barnett v. Okeechobee Hosp.*, 283 F.3d 1232, 1237 (11th Cir. 2002) ("A claim is deemed to be presented when a federal agency receives . . . an executed Standard Form 95 or other written notification of an incident . . . ." (quoting 28 C.F.R. § 14.2 (2001))). The email from the VA Office of General Counsel did not qualify as a denial of Mr. Wright's claim. The email stated that the VA would not be able to review Mr. Wright's claim before the six-month deadline. An actual denial must be "in writing and sent to the claimant, his attorney, or legal representative by certified or registered mail" and "include a statement that, if the claimant is dissatisfied with the agency action, he may file suit in an appropriate U.S. District Court not later than 6 months after the date of mailing of the notification." 28 C.F.R. § 14.9(a) (2017). The communication was sent via email, not certified or registered mail. Moreover, the communication stated *not* that Mr. Wright's claim was denied, but instead that the claim would not be resolved within the six-month time period. (Doc. 35 at 6). So, this email could not be a formal denial.

Because the claim was unresolved, Mr. Wright was required to wait six months from the

8

date the VA received his claim before filing a complaint in federal court under 28 U.S.C. §2401(b). Mr. Wright filed a complaint in this court on December 15, 2017, four days before the six-month mark. Four days premature still fails subject matter jurisdiction. *See Turner ex rel. Turner v. United States*, 514 F.3d 1194 (11th Cir. 2008) (dismissing a claim that was filed under the FTCA five days short of the six-month requirement).

Because Mr. Wright did not comply fully with the FTCA requirements for filing suit, his claim lacks federal subject matter jurisdiction and must be dismissed pursuant to Rule 12(h)(3) of the Federal Rules of Civil Procedure.

### B. Count II

The United States argues that the doctrine of sovereign immunity also bars Counts II of Mr. Wright's Fourth Amended Complaint because the United States has not expressly consented to waive sovereign immunity as to the First Amendment claim asserted. The claim alleges that the United States, through the VA, violated Mr. Wright's First Amendment rights by denying him the ability to petition the government for redress of his grievances.

Unlike Mr. Wright's medical malpractice claims in Count I, which fall within the scope of the Federal Tort Claims Act, his claim against the United States in Count II alleges a First Amendment violation. The FTCA does not waive sovereign immunity for "federal constitutional torts." *McCollum v. Bolger*, 794 F.2d 602, 608 (11th Cir. 1986). Nor has Congress elsewhere expressly waived sovereign immunity for claims alleging purported violations of constitutional rights. *See United States v. Timmons*, 672 F.2d 1373, 1380 (11th Cir. 1982). Without such a waiver, this court lacks jurisdiction to consider the claims. *See, e.g.*, *Bolger*, 794 F.2d at 608 (federal courts have no subject matter jurisdiction over claims alleging constitutional torts by United States agents).

The United States alternatively argues that Mr. Wright lacks standing to bring this claim. Standing is a prerequisite to finding that subject matter jurisdiction exists in any case. *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 89 (1998) (noting that standing is a jurisdictional prerequisite). Constitutional standing has three requirements: (1) an injury-in-fact, (2) a causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury is redressable. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).

First, the plaintiff must have suffered an actual injury. The Supreme Court fiercely protects First Amendment rights, noting that the loss of a First Amendment freedom "for even minimal periods of time" constitutes "irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). Here, Mr. Wright argues that his First Amendment rights were violated by his "inability to effectively petition the government for a redress of grievances." (Doc. 35 at 9).

But Mr. Wright has repeatedly used his First Amendment rights to petition the government. He noted that he has called, written letters, and submitted "numerous complaints" to VA Patient Advocates. (Doc. 35 at 9). He is exercising his First Amendment rights by filing this very complaint to air his grievances. But the right of free speech does not carry a corresponding right to force the government to answer. Mr. Wright has suffered no injury to his First Amendment rights and therefore lacks standing.

Because Congress has not waived sovereign immunity regarding constitutional tort claims, such as that in Count II of Mr. Wright's Fourth Amended Complaint, and alternatively because Mr. Wright lacks standing to bring such a claim, this court lacks jurisdiction to consider it. Therefore, the court must dismiss Count II pursuant to Rule 12(h)(3) of the Federal Rules of Civil Procedure.

### C. Count III

The United States also argues that the doctrine of sovereign immunity bars Count III of Mr. Wright's Fourth Amended Complaint. The United States has not expressly consented to waive sovereign immunity as to the Fourteenth Amendment due process violation[2] asserted, so it contends that sovereign immunity bars the claim. The claim alleges that the United States, through the VA, violated Mr. Wright's Fourteenth Amendment right to due process by failing to provide veterans with proper healthcare resources.

As previously stated above, the FTCA does not waive sovereign immunity for general federal constitutional torts. *See Bolger*, 794 F.2d at 608. Congress has not expressly waived sovereign immunity for alleged constitutional violations elsewhere. *See Timmons*, 672 F.2d at 1380. Because the United States has not waived sovereign immunity, this court lacks jurisdiction to consider the claims. Due to the lack of subject matter jurisdiction, this court must dismiss Count III pursuant to Rule 12(h)(3) of the Federal Rules of Civil Procedure.

### D. Count IV

The United States argues that the doctrine of sovereign immunity bars Count IV of Mr. Wright's Fourth Amended Complaint because the United States has not expressly consented to waive sovereign immunity as to the Fourteenth Amendment equal protection violation[3] asserted. The claim alleges that the United States, through the VA and DOJ, violated Mr. Wright's Fourteenth Amendment right to equal protection by permitting discrimination of LGBT persons. Because the DOJ "now assert[s] that both businesses and health care providers have a 'right to

---

[2] Without ruling on this ground, the court also notes that the Fourteenth Amendment is limited to state violations of due process and equal protection and does not apply to federal violations.

[3] As in Count III, the court notes that the Fourteenth Amendment does not provide a cause of action against federal actors without ruling on this as a ground for dismissal.

discriminate'" against LGBT persons, the DOJ removed guidance preventing discrimination, and President Trump appointed David Wilkie, who allegedly has ties to discriminatory organizations and individuals, as Secretary of the VA, Mr. Wright maintains that the United States discriminates against LGBT persons. Additionally, Mr. Wright argues that Defendant Robert Wilkie, as acting Secretary of the VA, is prejudiced against LGBT persons and racial minorities.

As explained in Counts II and III, the FTCA does not waive sovereign immunity for general federal constitutional torts. *See Bolger*, 794 F.2d at 608. Congress has not expressly waived sovereign immunity for alleged constitutional violations. *See Timmons*, 672 F.2d at 1380. Because the United States has not waived sovereign immunity, this court lacks jurisdiction to consider the claims. Due to the lack of subject matter jurisdiction, this court must dismiss Count IV pursuant to Rule 12(h)(3) of the Federal Rules of Civil Procedure.

Further, Mr. Wright alleges that his equal protection rights were violated by Defendant Robert Wilkie "in his capacity as a person claiming to be the acting Secretary of Veterans Affairs," which the court assumes means in his official capacity as acting Secretary of the VA. (Doc. 35 at 1). This claim also fails. "As an action against a federal official in his official capacity, this action is viewed as a suit against the United States. The United States is immune from suit unless it consents to be sued." *Swank, Inc. v. Carnes*, 856 F.2d 1481, 1483 (11th Cir. 1988) (per curiam) (internal citations omitted). Suing Mr. Wilkie in his official capacity is akin to suing the United States. Therefore, Count IV is dismissed against Mr. Wilkie because of sovereign immunity, just as Count IV is dismissed against the United States.

To the extent Mr. Wright argues that *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics* provides an avenue to sue Mr. Wilkie, his reliance on *Bivens* is misguided. *Bivens* stands for the proposition that a federal official can be sued in his individual

capacity for certain constitutional violations for which no alternative remedy exists. *See Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388 (1971); *see also Ziglar v. Abassi*, 137 S. Ct. 1843, 1857 (2017) ("[T]he Court has made clear that expanding the *Bivens* remedy is now a 'disfavored' judicial activity."). Because Mr. Wright sues Mr. Wilkie "in his capacity as a person claiming to be the acting Secretary of Veterans Affairs," which the court assumes means in his official capacity, (doc. 35 at 1), *Bivens* does not provide a remedy against a federal official in his official capacity.

Alternatively, if Mr. Wright intended to sue Mr. Wilkie in his individual capacity, sovereign immunity would not bar such a claim, if properly pled. *See Swank, Inc.*, 856 F.2d at 1483 (explaining that sovereign immunity does not protect federal officials sued in their individual capacity). Such a claim must be brought under the Fifth Amendment due process clause, which prohibits the federal government and federal actors in their individual capacities from denying any person of equal protection of the laws. *See Bolling v. Sharpe*, 347 U.S. 497, 500 (1954). A *Bivens* action may be appropriate when a plaintiff sues a federal official in his individual capacity for a constitutional violation for damages, and the plaintiff lacks adequate alternative judicial relief. *See Ziglar*, 137 S. Ct. at 1854, 1858.

Because the United States did not address the possibility of a *Bivens* action in its motion to dismiss and because the court cannot discern Mr. Wright's intent, the court does not presume to address a potential individual capacity claim. The court must dismiss this count, but will do so without prejudice.

### E. Count V

The United States contends that Mr. Wright lacks standing to bring his claim that the acting Secretary of the VA is "illegitimate." Mr. Wright contends that he "is not asking the Court

to resolve this issue" of who the proper acting Secretary of the VA is, as the U.S. District Court for the District of Columbia is deciding that very question in a pending case (which was since dismissed on August 1, 2018). (Doc. 35 at 13–14). *See Hamel v. U.S. Dep't of Veterans Affairs*, Case No. 1:18-cv-1005 (RC) (D.D.C. 2018). Instead, he wants the alleged illegitimacy of the acting Secretary of the VA to be considered when computing his damages.

As previously mentioned, constitutional standing has three requirements: (1) an injury-in-fact, (2) a causal connection, and (3) a likelihood that the injury is redressable. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). The Supreme Court has explained that an injury must be concrete and particularized as well as actual or imminent. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 125 (2014). Here, Mr. Wright is not alleging any personal injury. While he has presented facts that, taken as true, may prove that the acting Secretary of the VA is "illegitimate," he has not explained how he is injured by this change in personnel. Because no injury has been alleged, Mr. Wright lacks standing to bring this claim, whatever it may be. Therefore, Count V must be dismissed for lack of subject matter jurisdiction.

The United States further contends that Mr. Wright has failed to state a claim for which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure. The court agrees. Because Mr. Wright merely raises but instructs the court not to resolve the issue of whether the acting Secretary of the VA is illegitimate, he has not stated a claim upon which relief can be granted. Count V must also be dismissed for failure to state a claim.

### F. Count VI

The United States argues that Mr. Wright failed to exhaust his administrative remedies before filing Count VI of his Fourth Amended Complaint and that he lacks standing to assert a claim that the government has failed to safeguard critical private data. Mr. Wright alleges that

the United States, specifically the VA, "failed to implement basic data security procedures to secure the private data of the Plaintiff" and "suffered numerous critical data losses of private information." (Doc. 35 at 16).

The United States contends that Mr. Wright failed to first exhaust his administrative remedies under the Privacy Act of 1974, 5 U.S.C. § 552a. The Privacy Act contains numerous causes of action, some of which first require exhaustion of administrative remedies, and some of which do not. *See generally* 5 U.S.C. § 552a (2012). Neither Mr. Wright nor the United States indicated under what section the purported cause of action falls.

Section 552a(g)(1)(D), which allows an individual who has been adversely affected by a federal agency's failure to abide by the Privacy Act to sue that agency, appears to be the most appropriate section for this cause of action. *See* 5 U.S.C. § 552a(g)(1)(D) (2012). No allegations support other causes of action under the Privacy Act, which include an agency's wrongful determination to amend the individual's record, failure to comply with an individual request, and failure to maintain accurate records. *See* 5 U.S.C. § 552a(g)(1). So, the court will assume Mr. Wright is alleging that the VA failed to abide by the Privacy Act under § 552a(g)(1)(D). Assuming that Mr. Wright's cause of action falls under § 552a(g)(1)(D), that section does not require exhaustion. *See Diederich v. Army*, 878 F.2d 646, 648 (2d Cir. 1989); *Nagel v. HEW*, 725 F.2d 1438, 1441 & n.2 (D.C. Cir. 1984). Therefore, Mr. Wright's claim is not barred for his failure to exhaust administrative remedies.

But the United States also argues that Mr. Wright lacks standing. As discussed regarding Counts II and V, constitutional standing has three requirements: (1) an injury-in-fact, (2) a causal connection, and (3) a likelihood that the injury is redressable. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). An injury must be concrete and particularized, as well as imminent

or actual. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 125 (2014).

Similarly to his allegations in Count V, Mr. Wright has failed to assert a personal injury for Count VI. He generally claims that the VA has lost private information data, that Chinese nation-state actors stole data from the Office of Personnel Management, and that President Trump revealed the identities of intelligence informants. But Mr. Wright fails to address whether his personal data was implicated in these breaches, only mentioning that data was generally lost. *See Lujan*, 504 U.S. at 56–67 (holding that a speculative injury is not sufficient to satisfy standing requirements).

An injury must be particularized; in other words, it "must affect the plaintiff in a personal and individual way." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016). Mr. Wright failed to explain how the data affected him in a personal and individual way. Without more, a bare procedural violation does not satisfy the standing requirements. *See id.* at 1550 ("A violation of . . . procedural requirements may result in no harm."). Further, he does not allege he is a member of the intelligence community; therefore any revelation of informant identity would not injure Mr. Wright.

Even assuming the data breaches somehow injured Mr. Wright, he still lacks a plausible cause of action under the pleading standards of Rule 12(b)(6) of the Federal Rules of Civil Procedure. The Supreme Court has held that "an individual subjected to an adverse effect has enough to open the courthouse door, but without more has no cause of action for damages under the Privacy Act." *Doe v. Chao*, 540 U.S. 614, 624–25 (2004). And the plaintiff must be able to show his damages. Here, Mr. Wright alleges that he "is seeking damages in order to ensure the future security of his family, to pay for increased security, and if necessary, have the means to escape to an allied country where he can safely continue his medical care without having to

reveal his [data]." (Doc. 35 at 17). But Mr. Wright failed to show that the data breaches have caused him to take on these additional costs.

The Eleventh Circuit held that beyond an adverse effect, a plaintiff must be able to show actual damages. *See Speaker v. U.S. Dep't of Health & Human Servs. Ctrs. for Disease Control & Prevention*, 623 F.3d 1371, 1382–83 (11th Cir. 2010) (finding that the plaintiff had shown actual damages when he alleged that the CDC's unlawful disclosure caused his marriage dissolution, was the basis of death threats he received, and caused emotional distress). Instead, Mr. Wright claims damages for expenses that have not yet occurred and may never occur. Assuming Mr. Wright may have an injury sufficient to show standing, he failed to plead damages as a requirement of the Privacy Act cause of action.

Because Mr. Wright lacks standing and fails to plead a cause of action, the court must dismiss Count VI for want of subject matter jurisdiction and for failure to state a claim.

## IV. CONCLUSION

For the reasons discussed above, the court finds that Defendant United States' motion to dismiss is due to be GRANTED. The court will DISMISS WITHOUT PREJUDICE Counts I and IV. The court will DISMISS WITH PREJUDICE Counts II, III, V, VI because Mr. Wright cannot state a claim against the United States or its officials in their official capacities for these counts under any set of facts.

The court will enter a separate Order consistent with this Memorandum Opinion.

**DONE** and **ORDERED** this 5th day of October, 2018.

_____
**KARON OWEN BOWDRE**
CHIEF UNITED STATES DISTRICT JUDGE